**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-24037-BLOOM**

ORELBE ZAYAS MANTILLA,

Petitioner,

v.

WARDEN, KROME NORTH SERVICE PROCESSING CENTER,

Respondent.
______________________________________/

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** is before the Court upon Petitioner Orelbe Zayas Mantilla's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), ECF No. [1]. Respondents filed a Response, ECF No. [8], to which Petitioner filed a Reply, ECF No. [23]. The Court has carefully reviewed the Petition, the Response, the Reply, the record, applicable law, and is otherwise fully advised. For the reasons set forth below, the Petition is granted in part.

## I. BACKGROUND

Petitioner is a native and citizen of Cuba who entered the United States as a lawful permanent resident on July 7, 1994. ECF No. [8-2]. Following his conviction for lewd or lascivious molestation of a child under twelve years of age, Petitioner was placed in removal proceedings. ECF Nos. [8-2], [8-3]. On March 26, 2008, an Immigration Judge ordered Petitioner removed to Cuba. ECF No. [8-4]. Petitioner did not appeal, and the removal order became administratively final. ECF No. [8-2].

On April 28, 2015, U.S. Immigration and Customs Enforcement ("ICE") took Petitioner into custody pursuant to the outstanding removal order. ECF No. [8-5]. On July 30, 2015, ICE

released Petitioner under an Order of Supervision ("OSUP"). ECF No. [8-5]. On October 25, 2025, ICE re-detained Petitioner for purposes of effectuating his removal. ECF No. [8-2]. On October 26, 2025, ICE served Petitioner with a Notice of Revocation of Release, which Petitioner refused to sign. ECF No. [8-6]. On November 4, 2025, the Cuban Government refused Petitioner's repatriation. ECF No. [8-2].

On December 4, 2025, ICE served Petitioner with a Notice of Removal to Mexico, which he refused to sign. ECF No. [8-7]. On January 28, 2026, ICE attempted to effectuate Petitioner's removal to Mexico at the San Ysidro port of entry, but Petitioner failed to cooperate with that removal attempt. ECF No. [8-2]. On February 10, 2026, ICE served Petitioner with a Warning for Failure to Depart, which he refused to sign. ECF No. [8-8]. On February 24, 2026, ICE served Petitioner with another Notice of Removal to Mexico. ECF No. [8-9]. On March 4, 2026, ICE served Petitioner with a Notice of Failure to Comply, which he likewise refused to sign. ECF No. [8-10]. ICE continued its removal efforts. On May 8, 2026, Petitioner was served with another Notice of Removal to Mexico and another Warning for Failure to Depart, both of which he refused to sign. ECF Nos. [8-11], [8-12]. On June 12, 2026, ICE again served Petitioner with a Notice of Removal to Mexico and a Warning for Failure to Depart, both of which he again refused to sign. ECF Nos. [8-13], [8-14]. The record also contains instruction sheets advising Petitioner of his obligation to assist ICE in obtaining the documentation necessary to effectuate his removal. ECF Nos. [8-8] at 2, [8-12] at 2, [8-14] at 2.

On June 12, 2026, ICE provided Petitioner an informal interview to give him an opportunity to respond to the reasons for revocation of his OSUP. ECF No. [8-15]. Petitioner refused to speak with the deportation officer, provide a written statement, or submit supporting documentation. ECF No. [8-15].

Petitioner remains detained at the Krome North Service Processing Center in Miami, Florida, pursuant to his final removal order. ECF No. [8-5]. Respondents represent that ICE has elevated Petitioner's case to Enforcement and Removal Operations Headquarters and is exploring additional third-country removal options. ECF No. [8-2] ¶ 29.

Petitioner challenges his detention on two principal grounds: First, he contends that his removal is not significantly likely in the reasonably foreseeable future and that his continued detention therefore violates *Zadvydas v. Davis*, 533 U.S. 678 (2001). ECF No. [1] at 3–6. Second, Petitioner contends that ICE violated his procedural due process rights and its own regulations by revoking his OSUP without providing the prompt informal interview required by 8 C.F.R. § 241.4(l)(1). *Id.* at 6–10.

Respondents maintain that Petitioner's detention remains lawful because his own failure to cooperate has impeded ICE's efforts to effectuate removal. ECF No. [8] at 4, 7. Respondents further maintain that ICE lawfully revoked Petitioner's OSUP and ultimately afforded him the informal interview required by the applicable regulations. ECF No. [8] at 4, 7.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241(a), district courts have the authority to grant writs of habeas corpus. Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner argues that his continued detention violates *Zadvydas* because he has remained in custody since October 25, 2025, and there is no significant likelihood that he will be removed

in the reasonably foreseeable future. ECF No. [1] at 1. Petitioner points out that ICE has not removed him since 2008, ECF No. [1] at 2, Cuba refused to accept his repatriation, and Petitioner does not have valid travel documents or a confirmed removal date. ECF No. [1] at 5. Petitioner also maintains that ICE has failed to establish that Mexico or any other country will accept him. ECF No. [1] at 5.

Respondents do not dispute that Petitioner has remained detained for more than six months, ECF No. [8] at 6, or that Cuba has refused Petitioner's repatriation, ECF No. [8-2] ¶ 17. Rather, Respondents contend that Petitioner cannot establish a *Zadvydas* violation because his own failure to cooperate has obstructed ICE's attempts to effectuate removal. ECF No. [8] at 6.

Section 1231(a) applies to aliens who are subject to a final order of removal. *See* 8 U.S.C. § 1231(a). When an alien is ordered removed, "the Attorney General shall remove the alien from the United States within a period of 90 days[,]" which is known as the "removal period." *Id*. Once the order of removal is finalized, the Government should do its best to execute removal during the ninety-day period. *See Zadvydas*, 533 U.S. at 699–701. But sometimes the Government does not timely remove the petitioner, so the indefinite detention of an alien "raises serious constitutional concerns." *Sosa v. Warden, Baker Corr. Inst*., No. 26-cv-51, 2026 WL 592434, at *2 (M.D. Fla. Mar. 3, 2026). "The Supreme Court in *Zadvydas* held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation." *Id*.

So, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). If the petitioner provides such evidence, the burden shifts to the Government to provide evidence sufficient to rebut that showing. *Id.* (quoting

*Zadvydas*, 533 U.S. at 701).

The removal period may be extended if the noncitizen fails or refuses to make a timely, good-faith application for travel documents or otherwise acts to prevent removal. 8 U.S.C. § 1231(a)(1)(C). The Eleventh Circuit has recognized that the six-month presumptively reasonable period may be tolled when the noncitizen acts to prevent removal. *Guo Xing Song v. U.S. Att'y Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013). Also, when a noncitizen's own refusal to cooperate prevents removal, that noncooperation may defeat a claim that removal is not reasonably foreseeable. *See Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019); *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012).

Here, Petitioner argues that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner points out that nowhere on the record is there a concrete removal plan, evidence of communications with Mexico, efforts to obtain travel documents, evidence that Mexico has agreed to accept Petitioner, or even an articulation of ongoing steps toward effectuating removal. Moreover, there is evidence that Mexico's acceptance of a Cuban national may be contingent upon the individual's agreement to go there, and Respondents do not have such agreement. *See Sanchez v. Bondi*, No. C25-2573-KKE, 2026 U.S. Dist. LEXIS 11159, 2026 WL 160882, at 3-4 (W.D. Wash. Jan. 21, 2026) (noting that Mexico's conditional acceptance casted doubt on Respondents' ability to remove the petitioner). Respondents also state that they are "exploring additional third countries to remove Petiitoner," ECF No. [8-2], but there is no indication a third country has been identified or that travel documents or arrangements have been made.

Under these circumstances, the Court finds that Petitioner has shown that his removal is not likely in the reasonably foreseeable future, and the burden shifts to the Government to rebut

that showing. Respondents have not done so, providing no evidence that an actual plan of removal or any coordination with Cuba, Mexico, or any other country has taken place. Instead, Respondents assert that Petitioner has thwarted his own removal. *See generally* ECF No. [8]. Respondents point to the Notice of Removal, Warnings for Failure to Depart, Notice of Failure to Comply, and the unsuccessful January 28, 2026, removal attempt, as evidence that Petitioner has failed to cooperate with the removal process. ECF Nos. [8-2], [8-10]. However, the Court is not convinced that the events taken place so far constitute a thwarting of removal. The crux of the "thwarting removal" analysis is whether the "keys" to Petitioner's freedom are in his pocket—whether ICE would likely be able to effectuate his removal if Petitioner would simply cooperate. *Singh v. U.S. Att'y Gen.*, 945 F.3d at 1314 (citation omitted). But there is no evidence of Petitioner holding the keys here—of some legitimate removal effort (e.g., travel document procurement, communication with Mexico, or otherwise) of which Petitioner actually interfered. Nor have Respondents provided information regarding the January 28, 2026, removal attempt such that the Court could determine whether Petitioner thwarted such effort. Therefore, Respondents have not met their burden to show removal is reasonably likely in the foreseeable future.

Accordingly, the Court finds that Petitioner is entitled to release under *Zadvydas*. Of course, if removal becomes likely in the reasonably foreseeable future, ICE can detain Petitioner to "assur[e] [his] presence at the moment of removal." *Zadvydas*, 533 U.S. at 680.[1]

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition, **ECF No. [1]**, is **GRANTED in part**.

[1] Because the Court orders Petitioner's release based on this argument, the Court does not reach Petitioner's remaining arguments.

2. Respondents are **ORDERED** to release Petitioner from custody **no later than 5:00 p.m. ET on November 13, 2026**, subject to and in accordance with the conditions in his preexisting Order of Supervision. Respondents shall return all of Petitioner's personal belongings to him upon release.
3. Respondents shall certify compliance with this Order **by November 16, 2026**.
4. The Clerk shall **CLOSE** this case.
5. The Court retains jurisdiction as necessary to enforce this Order
6. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 10, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

**Orelbe Zayas Mantilla**
A# 039273851
Krome North Service Processing Center
Inmate Mail/Parcels
18201 SW 12th Street
Miami, FL 33194
PRO SE